UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HAZEL DAVION,** <br><br> Plaintiff, <br><br> v. <br><br> **COMMISIONER OF SOCIAL SECURITY,** <br><br> Defendant. | Civ. No. 19-1116 (KM) <br><br> **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Before the Court is an appeal filed by plaintiff Hazel Davion seeking review of the Administrative Law Judge's ("ALJ") finding that she was not disabled under the Social Security Act. (Tr. 12)[1] For the reasons explained herein, I will grant plaintiff's appeal and remand the matter for a new decision.

### I. Summary

Plaintiff Hazel Davion filed for Disability Insurance Benefits ("DIB") on July 9, 2015. (Tr. 189-90) In her application, plaintiff alleged that her disability began on September 21, 2012. (Tr. 189) Plaintiff had "acquired sufficient quarters of coverage to remain insured through December 31, 2017," the "date last insured." (Tr. 12) Plaintiff was required to establish disability on or before that date to be entitled to a period of disability and DIB. (Tr. 12)

Plaintiff's claim was denied initially and upon reconsideration on February 22, 2016. (Tr. 107, 114) Plaintiff then requested a hearing which was

---

[1] Citations to the record will be abbreviated as follows. Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"Tr" = Administrative Record filings (DE 7)

1

held on December 4, 2017. (Tr. 12) The ALJ concluded that plaintiff "was not under a disability within the meaning of the Social Security Act from September 21, 2012, through the date last insured." (Tr. 12) The Appeals Council declined to review the ALJ's decision. (Tr. 1) Plaintiff now appeals the ALJ's determination before this Court.

## II.     Discussion
### a.  Legal standard

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

### b. ALJ Decision at Issue in this Appeal

The ALJ determined that plaintiff was not disabled from September 21, 2012 through December 31, 2017, the date last insured. (Tr. 12, 21)

The ALJ found that plaintiff did not engage in substantial gainful activity from the alleged onset date through her date last insured. (Tr. 14) The ALJ found the following severe impairments: chronic obstructive pulmonary disease ("COPD"), osteoarthritis, adjustment disorder, hypertension, rotator cuff tear, and degenerative disc disease. (Tr 14.) However, the ALJ determined that plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 14)

In his step-three listing analysis, the ALJ considered the following listings: Listing 1.02 (major joint disfunction); Listing 1.04 (spine disorders); and Listing 12.04 (mental impairments). The ALJ found that plaintiff's conditions did not meet Listing 1.02 because she "has not had gross anatomical deformity" or "chronic joint pain and stiffness with signs of limitation of motor or other abnormal motion of the affected joint(s)." (Tr. 14) Nor did plaintiff experience "joint space narrowing, bony destruction, or ankylosis of the affected joint(s), with a resultant inability to ambulate

effectively" or which resulted "in an inability to perform fine and gross movements effectively." (Tr. 14-15)

With respect to Listing 1.04, the ALJ found that plaintiff does not have evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. (Tr. 15)

Finally, the ALJ determined that plaintiff's "mental impairment did not meet or medically equal the criteria of listing 12.04." (Tr. 15). The ALJ relied on the following evidence: (1) "[i]n understanding, remembering, or applying information," plaintiff "had a moderate limitation"; (2) plaintiff "remains able to perform personal care, make doctor's appointments, insurance paper work, watch television and drive"; (3) plaintiff "had a moderate limitation" with respect to "concentrating, persisting, or maintaining pace"; and (4) plaintiff "had experienced a mild limitation" for "adapting and managing oneself." Based on that evidence, the ALJ determined that plaintiff's "mental impairment did not cause at least two 'marked' limitations' or one 'extreme' limitation;" and, as such, plaintiff failed to satisfy the criteria under paragraph B. (Tr. 15) According to the ALJ, that remained so even though "the consultative examiner noted that [plaintiff] had limited memory and borderline concentration and intelligence." (Tr. 15) The ALJ also "considered whether the 'paragraph C' criteria were established" and determined that "the evidence fails to establish the presence" of that criteria. (Tr. 16)

Next, the ALJ found that, through the date last insured, plaintiff had the RFC to perform light work under 20 C.F.R. § 404.1567(b). (Tr. 16) However, the ALJ found the following restrictions:

> [Plaintiff] can never climb ropes, ladders or scaffolds; never be exposed to unprotected heights or hazardous machinery; occasionally climb stairs and ramps; never crawl; occasionally stop and crouch; occasional reaching overhead and frequent reaching in all other directions; never have exposure to extremes in environmental conditions or concentrated pulmonary irritants; able to do only simple and routine tasks.

4

(Tr. 16) The ALJ noted that in making this finding, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," including opinion evidence. (Tr. 16)

The ALJ noted the following medical evidence with respect to plaintiff's physical symptoms. In September 2011, plaintiff was treated in the hospital after she fell and suffered a facial contusion. (Tr. 17) At that time, she was also treated for "abdominal pain alleged to be as a result of uterine fibroids." (Tr. 17) Plaintiff was treated with physical therapy. (Tr. 17) In November 2011, she was treated for lower back pain and left upper arm pain. (Tr. 17) Plaintiff was injured in July 2012 and sustained a periorbital contusion. (Tr. 17) At that time, she was also treated for chronic neck pain. (Tr. 17) In March 2015, plaintiff was treated for "contusion related to alcohol consumption," but her right shoulder X-ray was "unremarkable", and her cervical spine X-ray showed only mild arthritic changes." (Tr. 17)

In May 2015, plaintiff was treated for "bilateral leg and ankle pain, left shoulder pain and neck pain radiating into the arms with weakness on the left side." (Tr. 17) One month later, plaintiff's cervical spine "showed multilevel mild cervical spondylosis with mild spinal canal stenosis" and "neural foraminal narrowing." (Tr. 17) Plaintiff's medical records demonstrate that in December 2015, plaintiff was not taking any pain medication. (Tr. 17) Plaintiff continued treatment for her shoulder, neck, and back pain in January 2017. (Tr. 17) Records from that time demonstrate that plaintiff "showed normal strength in the lower extremities and intact sensation but limited range of motion in trunk flexion and extension." (Tr. 17) Further, plaintiff's "[s]traight leg raise was negative bilaterally" and her "[m]ood and affect were appropriate." (Tr. 17)

Plaintiff's October 2015 medical records demonstrate that she "had dyspnea on exertion with near syncopal episode"; was "a long-standing smoker with moderate CAD on catheterization"; had "COPD that was treated with bronchodilators"; was advised to quit smoking"; and had blood pressure controlled by medication. (Tr. 17) The next month, plaintiff's "cardiac

5

catheterization was essentially normal." (Tr. 17) Further, plaintiff was able to "do both fine and gross movements" with her hands, and her "grip was normal." (Tr. 18) Plaintiff was observed to have "a normal gait and walked without any motor deficit." (Tr. 18)

In July 2016, plaintiff was treated for right shoulder, back, and bilateral leg pain. (Tr. 18) Examination revealed plaintiff's forward elevation was limited to 90 degrees, abduction 10 degrees" and her "[e]xternal rotation was to 60 degrees." (Tr. 18) Plaintiff experienced pain any time she attempted "motion of the shoulder with forward elevation." (Tr. 18) Plaintiff's "[b]ilateral legs show[ed] negative strait leg raise." (Tr. 18) Additionally, the X-ray of her shoulder was "unremarkable" and the X-ray of her spine "showed mild anterolisthesis . . . but otherwise the disc space and the alignment was well maintained." (Tr. 18)

With respect to plaintiff's spinal impairments, a September 2016 MRI demonstrated a "slight annular bulge" with "mild right foraminal compromise" and "midline dis herniation . . . with left uncovertebral joint hypertrophy and significant left foraminal stenosis." (Tr. 17) The MRI also "showed annular tears with central and right lateral aspect of the disease." (Tr. 17) A November 2017 MRI demonstrated "left foraminal disc herniation narrowing at the neural foramen." (Tr. 18) Plaintiff then "underwent chiropractic treatment in November and December 2017 with limited results." (Tr. 18)

With respect to plaintiff's COPD, medical records demonstrate that she "was uncooperative" during testing and a "post inhaler test was not done due to poor cooperation." (Tr. 17-18)

The ALJ also examined the record of plaintiff's psychiatric history. He noted that an October 2015 report from consultative examiner Dr. David. Gelber revealed the following. Plaintiff's "mood was markedly depressed," and she "was tearful throughout the interview." (Tr. 18) However, plaintiff "denied suicidal ideation." Plaintiff's vocabulary and grammar use was poor, but her speech articulation was adequate. (Tr. 18) Plaintiff scored in the low-average range on the WAIS-IV Vocabulary test and borderline on the Information test. (Tr. 18) While she was able to recall three items immediately, plaintiff could not

6

recall any item after a five-minute delay. (Tr. 18) Plaintiff could spell "world" correctly, but could not perform serial sevens and struggled with serial threes. (Tr. 18) However, plaintiff was able to count down from 20. (Tr. 18) Plaintiff's general intelligence was in the low average to borderline range, and she was determined to have borderline concentration and short-term memory ability. (Tr. 18) Despite her mental impairments, plaintiff reported conducting the following activities: she washed herself and engaged in a hygiene routine, she attended doctor appointments as necessary, she conducted paperwork for insurance, she watched television and spoke to past colleagues on the phone, she drove short distances, and attended church about three times per month. (Tr. 18) However, plaintiff "did not use public transportation" and "indicated that her son and fiancé do all cleaning chores, cooking, laundry, and shopping." (Tr. 18) While plaintiff "sometimes accompanied them shopping," she "could not carry" the items. (Tr. 18)

     Based on that evidence, the ALJ determined that while plaintiff "does have significant impairments, they do not prevent all work activity." (Tr. 18) The ALJ noted that there were "only mild findings" with respect to plaintiff's "musculoskeletal complaints"; plaintiff "alleges that she uses a cane, but her gait is normal"; plaintiff's straight leg raise "has been consistently negative"; plaintiff "takes pain medication and has [been] treated with physical therapy, but no surgery has been suggested"; "[n]o medical source has reported that she is disabled or unable to work"; plaintiff's COPD "is controlled with bronchodilators"; plaintiff has no history of treatment for anxiety or depression; and plaintiff performs "basic daily living activities" that "belie a complete inability to work" and support the ALJ's RFC determination that plaintiff can perform the exertional demands of light work with the additional limitations previously noted. (Tr. 18-19)

     Next, the ALJ found that based on his RFC determination, plaintiff was unable to perform her past relevant work as a medical secretary. (Tr. 19) The ALJ then noted that plaintiff was born on July 6, 1963 and was 54 years old at the time she applied for DIB. (Tr. 19) Plaintiff subsequently "changed age

category to closely approaching advanced age." (Tr. 19) The ALJ also noted that plaintiff "has at least a high school education and is able to communicate in English."[2] (Tr. 19-20) Based on plaintiff's age, education, work experience, and RFC, "there were jobs that existed in significant numbers in the national economy that [she] could have performed." (Tr. 20) The vocational expert who testified at plaintiff's hearing opined that someone with those same factors could perform the requirements of representative occupations such as Cafeteria Attendant, Mail Clerk (non-government) and Cleaner. (Tr. 20) The ALJ "determined that the vocational expert's testimony [wa]s consistent with the information contained in the Dictionary of Occupational Titles." (Tr. 20)

Because the ALJ concluded that, through the date last insured, plaintiff's age, education, work experience, and RFC rendered her "capable of making a successful adjustment to other work that existed in significant numbers in the national economy," he entered a finding of "not disabled." (Tr. 20)

### c. Plaintiff's Challenge to the ALJ's Step-Three Listing Analysis

Plaintiff contends that the ALJ's listing analysis is faulty because he did not discuss all of plaintiff's severe impairments or "the comparison of that constellation of symptoms and diagnoses against listing-level severity in order to determine medical equivalence." (DE 20 at 12) Claimants bear the burden of providing that their impairments equal or meet the listings. Nevertheless, if a claimant's impairment does not match one of those listings in Appendix 1, "the ALJ is required to perform a comparison between the claimant's impairment(s) and those listed in Appendix 1." *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 151 (3d Cir. 2008) (citing 20 C.F.R. § 404.1526(b)). Indeed, the ALJ bears the "responsibility" to "identify the relevant listed impairment(s)" and "investigate the facts and develop arguments both for and against granting benefits." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 n.2 (3d Cir. 2000)

---

[2] The ALJ also noted that "transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that [plaintiff] is 'not disabled,' whether or not [she] has transferable job skills." (Tr. 20)

(quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000)). Failure to perform that analysis may constitute grounds for remand.

Here, the ALJ recognized that plaintiff suffered from COPD, a severe impairment, but failed to compare that impairment to any of the listings. (*See* Tr. 14-16) For example, Listing 3.02 ("Chronic respiratory disorders due to any cause except CF") is missing from the analysis at step three.  The ALJ also failed to discuss any evidence relevant to plaintiff's COPD. *Cf. Jones v. Barnhart*, 364 F.3d 501, 504-505 (3d Cir. 2004) (concluding that the ALJ's listing analysis met the requirements of *Burnett* where the ALJ discussed "the evidence pertaining to chronic obstructive and restrictive lung disease, specifically referencing '[p]ulmonary function studies . . . consistent with moderately severe obstructive and restrictive defects,' but pointing to the lack of pulmonary complications, and a finding that claimant's lungs were clear."); *Wisniewski v. Comm'r of Soc. Sec.*, 210 F. App'x 177, 180 (3d Cir. 2006) (concluding that the ALJ's step three analysis was adequate despite the failure to identify the listed impairment under consideration because the court was able to discern the particular listing based on the ALJ's discussion of the relevant evidence)

Further, the ALJ failed to analyze the combination of plaintiff's impairments to determine whether the aggregate effect of those impairments was equivalent to a listed impairment. *See* 20 C.F.R. § 404.1526(b)(3) ("If you have a combination of impairments, no one of which meets a listing . . . we will compare your findings with those for closely analogous listed impairments."); *Burnett*, 220 F.3d at 120 (remanding the matter to the ALJ to "fully develop the record and explain his findings at step three, including an analysis of whether and why [plaintiff's] back and knee impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments."). The ALJ did not mistake the legal standard; his opinion states that "the claimant did not have an impairment *or combination* of impairments that met or medically equaled the severity of one of the listed impairments."

(Tr. 14 (emphasis added)) Still, the underlying analysis is missing; there is no assessment of the combined effect of plaintiff's impairments. I do not say that the ALJ could not have permissibly reached that conclusion, but the court lacks a basis for judicial review of the ALJ's bare conclusion that the combination of plaintiff's impairments did not equate to a listing. *See Burnett*, 220 F.3d at 120

Because the ALJ failed to consider all of plaintiff's severe impairments, or those impairments combined, in his listing analysis, a remand is necessary.[3] *See Id.*

### d. Plaintiff's Challenge to the ALJ's RFC Determination

Next, plaintiff submits that the ALJ merely provided a "blanket recitation of the evidence followed by an announce[ment] of plaintiff's RFC." (DE 20 at 25) In plaintiff's hyperbolic formulation, that "procedure is tantamount to the ALJ issuing a two word decision: 'Is Disabled,' or 'Not Disabled.'" (DE 20 at 25). I do not agree; while I have found error, I do not find that the ALJ shirked his responsibilities in the manner unfairly suggested by the plaintiff. Because the matter is being remanded for a reanalysis of step three, it may be that the analysis of the RFC is affected. I therefore discuss it only briefly, in the interest of efficiency.

The ALJ determined that plaintiff has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), subject to certain limitations. (Tr. 16) That regulation defines light work as follows:

---

[3] Plaintiff also submits that the ALJ failed to properly consider her psychiatric impairments, which, as evidenced by Dr. Gelber's report, satisfy the paragraph B criteria, "establishing presumptive disability under listing 12.04" (DE 20 at 19-20) The ALJ, however, considered Dr. Gelber's report and the evidence of plaintiff's psychiatric conditions and determined that criteria of paragraph B were not established. A district court does not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). Thus, in remanding the matter I do not mean to suggest the ALJ must reevaluate his determination that plaintiff's psychiatric symptoms do not satisfy Listing 1.04. Instead, remand is required because the ALJ did not consider all of plaintiff's impairments and did not consider the combined effect of those impairments.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. 404.1567(b). While the ALJ walked through plaintiff's medical record history, and explained the outcome of plaintiff's hospital and doctor visitors, the courses of treatment taken, and the demonstration of various MRIs, he did not discuss the evidentiary basis for his conclusions about the weight plaintiff is able to lift or the duration plaintiff is able to sit or stand. The ALJ noted that he gave "partial weight to the opinions of the DDS (1A, 3A)," (Tr. 19) presumably referencing the opinions of two state agency physicians that plaintiff could perform a range of light work. (Tr. 74-75, 94-95) The factual underpinnings, however, are not stated.

It is true, as the Commissioner submits, that the ALJ devotes "four, single spaced pages" to a summary and discussion of evidence. The ALJ fails to connect that evidence to his RFC. For example, the ALJ noted that plaintiff's "[p]ulmonary function testing showed severe obstructive lung disease, but the doctor noted that the claimant was uncooperative, and a post inhaler test was not done due to poor cooperation." (Tr. 18) The ALJ acknowledges that plaintiff's COPD is "severe" but does not explain how, despite that severity, plaintiff is able to engage in light work or how a severe obstructive lung disease may impair her ability to stand for six hours and frequently lift ten pounds. (*See* Tr. 18) The ALJ notes that plaintiff was "uncooperative" during her lung examination (Tr. 18) but that her COPD is "controlled with bronchodilators"

11

(Tr. 19). On remand, the ALJ should explicitly state how he has resolved these seeming contradictions or uncertainties.

Plaintiff also argues that the ALJ erred in failing to consider that plaintiff was approaching a higher age category. (DE 20 at 32-33) The Regulations provide that if a claimant is "closely approaching advanced age (age 50-54)," the Commissioner will consider that the claimant's "age along with a severe impairment(s) and limited work experience may seriously affect [the claimant's] ability to adjust to other work." 20 C.F.R. § 404.1563(b).

The Commissioner employs a two-part test to determine a borderline age situation that may warrant use of the higher age category: (1) "Is the claimant's age within a few days or a few months of the next higher age category" and (2) "Will the higher age category result in a decision of 'disabled' instead of 'not disabled.'" Hearing, Appeals, and Litigation Law Manual (HALLEX) 1-2-2-42(B), 2016 WL 1167001, at *1. "If the answer to one or both parts of the test is 'no,' a borderline age situation either does not exist or would not affect the outcome of the decision." *Id.* In such instance, the ALJ will use the claimant's chronological age. *Id.* However, if the answer to both questions is "yes," then "a borderline age situation exists, and the ALJ must decide whether it is more appropriate to use the claimant's chronological age or the higher age category." *Id.*

While the phrase "within a few days or a few months" is not defined, the Commissioner "generally" considers it "to mean a period not to exceed six months" from: (1) the date of adjudication, (2) the date last insured, (3) the end of disabled widow(er)'s benefit prescribed period, (4) the end of child disability re-entitlement period, or (5) the date of cessation of disability. *Id.* Here, plaintiff turned 55 six months and six days after the date last insured and four months after the date of adjudication. Because plaintiff was within six months of a higher age category from the date of adjudication, on remand, the ALJ should consider whether the use of a higher age category would have resulted in a finding of "disabled" instead of "not disabled." *See* (HALLEX) 1-2-2-42(C)(5), 2016 WL 1167001, at *3 ("The ALJ will explain in the decision that he or she

12

considered the borderline age situation, state whether he or she applied the higher age category or the chronological age, and note the specific factor(s) he or she considered.").

In short, the matter is being remanded in any event, and the reanalysis of step three may well alter the RFC analysis. Any reconsideration of the RFC, however, should include an explanation of how the ALJ reached his RFC determination, and what evidence he was crediting and discrediting in doing so, especially as to COPD and the age category. *See Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019) (quoting Social Security Ruling 96-8p, 1996 WL 374184, at *7) ("[S]ocial security regulations permit, and indeed require, an ALJ to offer 'a narrative discussion describing how the evidence supports each' limitation at step four of the disability analysis.")

### III. Conclusion

For the reasons set forth above, I will grant plaintiff's appeal and remand the matter for a new decision. In remanding, I do not intend to dictate a result or constrain the ALJ's discretion in weighing the evidence and drawing such conclusions as may be appropriate.

A separate order follows.

Dated: November 10, 2020

/s/ Kevin McNulty
_____
**Kevin McNulty
United States District Judge**